PRICE, Judge.
Plaintiffs appeal the trial court’s judgment dismissing their subrogation claim brought on a multi-peril insurance policy issued by the defendant.
The following facts were established at trial by joint stipulation of counsel. Western Restaurants, Inc. (hereinafter Western) was record owner of the land and buildings situated at 3830 East Texas Street in Bossier City. On April 18, 1978, Western entered into a lease — purchase agreement with Gentry Construction Company, Inc. (Gentry) with respect to this property under which Gentry was obligated to obtain fire and hazard insurance in the amount of $435,000 on the building and $35,000 on its contents.
The property was initially owned by D.A. Kelly and insured under a special multi-per-il policy issued by defendant National Union Fire Insurance Co. (National) to Kelly’s Truck Terminal, Inc. (Kelly’s), in which Mr. Kelly owned all the stock. He and his wife owned 50 percent of the shares in Western to which he had later sold the property. The National policy provided blanket coverage for the property in question and several other properties owned by Kelly’s or by Mr. Kelly individually. After the property was sold to Western and the lease-purchase contract with Gentry was executed, the East Texas Street property was deleted from the National policy.
However, when Gentry experienced difficulty in maintaining insurance on the property as required under the agreement with Western, D.A. Kelly, Jr. (who conducted business for both Kelly’s and Western after D.A. Kelly’s death) had coverage of the property reinstated under the National policy by a change endorsement effective August 15, 1978.
On October 17, 1978, Gentry secured fire and hazard insurance on the property through a policy issued by Continental Casualty Company (CNA) in the amount of $175,000 on the building and $35,000 on the contents, and another policy issued by Home Insurance Company (Home), covering the building and contents in the amounts of $350,000 and $65,000 respectively. Western and Bossier Bank and Trust, which held a mortgage on the property, were named as loss payees under these policies.
The insured property was destroyed by fire on November 6, 1978. Proof of loss was submitted to CNA, Home, and National, but payment was refused. Suit was filed against all three insurers by Western, Bossier Bank and Trust and Kelly’s in district court for the parish of Bossier. Home and CNA removed the claim against them to the federal district court.
*528 During the pendency of both proceedings, the suit was settled by Home, which paid $306,500.75, and CNA, which paid $153,-250.38, to Western and Bossier Bank and Trust. Western, Bossier Bank and Trust, and Kelly’s then assigned all claims they may have under the National policy to Home and CNA. Pursuant to that assignment plaintiffs filed this suit, seeking recovery for 50% of the loss plus statutory penalties and attorney fees. The trial court specifically found that Kelly's, the named insured of defendant’s multi-peril policy, had no insurable interest in the destroyed property and that any attempted coverage of that property under the policy was void. He therefore rejected plaintiffs’ demands.
Plaintiffs’ sole contention on appeal is that the trial court erred in holding that the National Union policy afforded no coverage due to the named insured’s lack of insurable interest in the property. Defendant contends that no insurable interest existed and, even if it did, its policy is excess insurance under which there is no liability to pay until the limits of the primary coverage of Home and CNA have been exhausted. Inasmuch as we find merit in defendant’s latter contention, we pretermit a discussion of the issue of insurable interest as unnecessary to disposition of this case.
The policies of Home and CNA are virtually identical with the exception of the amount of insurance provided. Both contain the following clause generally prohibiting additional insurance on the property:
No additional insurance shall be permitted unless permission is granted by the completion of the following:
A. Permission is granted to carry additional insurance in the amount of -applying to property situated at 3830 E. Texas Street, Bossier City, Louisiana, which shall be deemed to be concurrent insurance.
The CNA policy allowed additional insurance in the amount of $415,000, the amount of insurance provided by the Home policy. The Home policy allowed additional insurance in the amount of $210,000, the amount of insurance provided by the CNA policy. These policies also contain a pro rata apportionment clause which provides as follows:
APPORTIONMENT: This Company shall not be liable for a greater proportion of any loss less the amount of the deductible if any from any any peril or perils included in this policy than (A) the amount of insurance under the policy bears to the whole amount of fire insurance covering the property or which would have covered the property except for the existence of this insurance whether collectible or not, and whether or not such other fire insurance covers against the additional peril or perils insured against hereunder, nor (B) for a greater proportion of any loss less the amount of the deductible, if any, than the amount hereby insured bears to all insurance, whether collectible or not, covering in any manner such loss, or which would have covered such loss except for the existence of this insurance; ...
The other insurance clause of the National Union policy provides that the insurer will share the loss on a pro rata basis where there is contributing insurance, and will provide excess coverage where there is specific insurance as defined in the policy. It reads as follows:
... If at the time of the loss, there is other insurance available to the insured or any other interested party covering such loss or which would have covered such loss except for the existence of this insurance, then the Company shall be liable as follows:
a. If such insurance is Contributing Insurance, defined as any insurance written in the name of the insured, upon the same plan, terms, conditions, and provisions as contained in this policy whether collectible or not, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such property.
b. If such insurance is Specific Insurance, defined as any insurance other than that described as Contributing Insurance in a. above, the Company shall not be *529 liable for any loss hereunder until the liability of such Specific Insurance has been exhausted, and then shall cover only such amount as may exceed the amount due from such Specific Insurance (whether collectible or not) after application of any contribution, coinsurance, average or distribution or other clauses contained in policies of such Specific Insurance affecting the amount collectible thereunder, not exceeding however, the applicable limit of liability under this policy.
The Louisiana Supreme Court in Graves v. Traders and General Insurance Company, 252 La. 709, 214 So.2d 116 (La.1968), a case involving proper apportionment of an insured loss between two insurance companies, noted the following general principles in the resolution of such questions:
The principal consideration in the interpretation of insurance policies is to ascertain the intention of the parties from the language of the contracts. Where these agreements are legally entered into, they have the effect of law on the parties. La.Civil Code Art. 1901. Thus, when the words of the contract are clear and explicit and lead to no absurd consequence, the courts may not alter them. La.Civil Code Art. 1945. And when a clause is susceptible to two interpreta-? tions, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory. La.Civil Code Art. 1951. Id, 214 So.2d at 119.
Under the clear terms of the National policy, it is only liable for a pro rata share of the loss where the other insurance is contributing insurance — i.e. issued in the name of National’s insured and upon the same plan, terms, conditions, and provisions of that policy. The Home and CNA policies clearly do not fall within this definition. They must therefore be considered specific insurance (“any insurance other than that described as Contributing Insurance”), in which case the National policy provides that it shall only be liable for any loss in excess of the policy limits of the other insurance. We feel the intent to provide only excess insurance under the present circumstances is clearly expressed by this policy language.
It is generally held that where one of two policies is clearly excess and the other contains no such provision, the excess clause may be respected and the excess insurer becomes liable only when the policy limits of the primary insurance has been exhausted. Thus if an insurer’s policy is only excess insurance, it would not be liable to the primary insurer who pays the claim. See Appleman, Insurance Law and Practice, Vol. 8A, Section 4909.
The Home and CNA policies do not contain an excess insurance provision. The clause upon which plaintiffs rely provides only for a pro rata sharing of the loss with any other insurance covering the property. Furthermore, each specifically prohibits procurement of insurance on the property other than in the amount provided under the other’s policy. By their own clear terms, these policies were intended to collectively provide full coverage on this property, each assuming a pro rata share of any loss.
An excess, insurance clause is generally held to prevail over a pro rata provision such as the one upon which plaintiffs base this claim — -i.e. excess insurance is not considered to constitute other valid insurance within the meaning of a pro rata clause. Appleman, Insurance Law and Practice, supra, Section 4909.25. See also Juan v. Harris, 263 So.2d 370 (La.App. 4th Cir.1973), affirmed and amended, 279 So.2d 187 (La.1974) wherein effect was given to excess clause of one insurance policy over pro rata clause of another policy which was held to be clearly primary.
Inasmuch as plaintiffs are the primary insurers, and National’s policy does not constitute other valid insurance within the meaning of plaintiffs’ pro rata clauses, National would only be liable for a share of the loss where the limits of plaintiffs’ policies have been exhausted. The record clearly shows that the loss did not exhaust the limits of either of the plaintiffs’ policies.
We therefore hold that, even if the National Union policy did constitute a valid *530 insurance contract, the trial court correctly dismissed the plaintiffs’ claim for contribution.
For the reasons assigned, the judgment appealed is AFFIRMED. All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.